We move to our final case of the day. Calderon-Rodriguez, I'm sorry, Ms. Rodriguez v. Sessions, which is number 17-1568. Mr. Kola. Yes, may it please the court, counsel. My name is Yusuf Kola. I represent petitioner in this case, Gabriela Rodriguez. Gabriela Rodriguez is a single mother of five children, four of which were born in the United States. She was placed in removal proceedings and she applied for a form of relief known as cancellation of removal. I won't go through all of what's required for cancellation removal but that's basically a way of getting a green card and being able to stay here if you meet certain statutory guidelines. One of those requirements is that a person has not committed a certain offense or a conviction that would bar them from receiving the cancellation of removal. That is the key and that's the heart of what's at this case. Ms. Gabriela Rodriguez was convicted of violating a Wisconsin restraining order. Under that restraining order, she violated that restraining order by having contact with the protected party in that case, a relationship she had with a former person. The immigration court judge denied her, pre-terminated her application for cancellation removal, saying that that violated section 237A to E double I of the Act, which says if you violate an order of protection that deals with threats of violence, repeated harassment, bodily harm, you are barred for cancellation removal. The immigration court judge relied on the case of the BIA decision of Stratham and saying that does apply, Stratham says it does apply to cases of no contact violations. Subsequently to that, the Board of Immigrations affirmed the immigration judge's decision, relying on Stratham and this court's decision in Garcia Hernandez. We're saying, we're arguing that both of those decisions do not apply to the specific case in this regard. First of all, we would argue Stratham was not properly decided and was never properly presented to this court to make a proper assessment of the BIA decision in Stratham. Stratham should not be given Chevron deference in this case for a variety of reasons. Stratham stretches what that barring provision in 237 states. 237 specifically states that a court must find that a person violated that portion of the order protection deals with threats of violence, repeated harassment, bodily injury. In this specific case, and even the case in Stratham, the court never found that. The court only found that they violate the stay away provision. When the Stratham issue came before this case in this court in Garcia vs. Hernandez, this court did not specifically, was never properly presented the Stratham decision. And I would note that in looking at the briefs that were presented, and I was listening to the oral arguments that were presented on Stratham was never even referenced in the brief, in the opening briefs of counsel in this case. So our argument goes back to Stratham was improperly decided and the court in Garcia vs. Hernandez accepted Stratham but was never properly presented, properly litigated in this forum here. What the court said in Garcia vs. Hernandez was that the decision of categorical or modified approach doesn't apply. They in the position that was adopted in the Ninth Circuit which says you look at what the court found, what the violation was, and let's assume that's the case. If that's the case then we do not have a violation of those provisions of the statute. We do not have a violation in this particular case of Mrs. Rodriguez where she violated those provisions that deal with threats of harms or repeated harassment or bodily injury. The statutory language though is a little broader. If the court determines the person has engaged in conduct that violates the portion of the protective order that involves protection against credible threats of violence, why isn't a stay-away provision covered by that statutory language? Because the definition is two lines below that of what order of protection should say. An order of protection has to be, protection order means any injunction issued for the purpose of any violent or domestic violence. In the Wisconsin statute... And it's routine that domestic violence protective orders include stay-away provisions precisely in order to protect people from violence, right? Correct. But then what would be the purpose of Congress in writing those specific words as two lines above that saying the court must make a finding of such-and-such. It had be no purpose in writing that statute. Stratum basically says if you got an order of protection, inherently that is designed to protect you against threats, violence, intimidation. Well that's not the case. It's a stretch for Stratum to say that. Even though protective orders might be given in that regard, that's not the case in all cases. In Wisconsin is one of the most unique states that I've seen out there. I've looked at all the statutes that dealt with all that with the Stratum type of decisions. Wisconsin is a state where you can get an order of protection for destroying someone's property that you at one point had a relationship with. Every other jurisdiction, Illinois, Kansas, California, Oregon, Utah, every decision that dealt with the Stratum type of case, those statutes specifically says in order to get an order of protection, you must do in essence what the federal statute requires, which is threats of harm or bodily harm and so forth. Wisconsin doesn't say that. Wisconsin adds an extra provision and that's where we come up with our coffee cup. If I had a relationship with someone before and I destroyed their coffee cup, presumably an order of protection can be issued in that case. But aren't you asking us to go back and apply the categorical approach then by distinguishing the Wisconsin statute because you're claiming that it can be issued for different reasons, some of which fall under the definition of the act and others that don't. When this is not a conviction, the categorical approach, as was decided by this court in Garcia-Hernandez, is not necessary and therefore we're available or we're able to look at the actual record in the case and we can determine, which is clear in this case, why the order of protection was issued, whether or not it falls within the definition of the acts order for protective order definition, and then whether or not the provision that state court found was the defined purposes. We don't have to go back to the categorical or modified approach. We have to look at what was done. In this particular case, in Wisconsin writes their complaints in a very unique way, which is basically a police report and at the end it says you guys figure it out. We have, she violated a provision that deals with a stay-away provision. How she got to that point is not the material point. The point is there must be a finding by a court that she violated a provision that deals with those three terms in the violation of the order of protection. The Wisconsin statute simply doesn't do that. So it's improper for the immigration court, the Board of Immigration Appeals, to go back in there and say that Wisconsin order of protection of restraining order inherently involves that, where the court did not make that finding. We do not know what the court found. We know that she violated those provisions in the way it's drafted in the complaint, which is a very lengthy complaint. But we're not, there's nothing to say she violated those provisions, and there's nothing in the complaint itself that says the basis for the order of protection dealt with intimidation, threats, or bodily harm. But the order of protection states why it was issued. But then we're being asked to go back and analyze even the order of protection. The order of protections can be obtained, a person alleged 20, 30, 40 things in order of protection that could be fraudulent. And only one is where the court says, okay, I find this. And we can't possibly do that. We have to look at, did the court that ultimately made this decision say, you violated the order of protection in these regards. I think it's improper to say just getting the order of protection is enough to make it so. You just simply can't jump to that point where you say, she has an order of protection, she should be protected. Congress specifically chose those words. And if you look at the writing of this particular statute, Congress didn't say conviction. Congress has said you violated the provisions. So they were very detailed in how they wanted to draft this. And when it's that detailed, we can't give Chevron deference to the board with regards to the precedent decision on this matter. Because they've extended the law. Congress says it's limited. You have to have order of protection, it has to deal with these issues, and you must violate it in this fashion. You simply cannot go to the next step of saying, we're assuming that you have an order of protection, you're in violation of those three provisions of the statute which bars you from cancellation removal. That is our position with regard to that. If I got it straight that it was Ms. Rodriguez, Gabriella Rodriguez, who originally sought this protective order? No, I don't believe that. That's okay. Okay, thank you. There's no further questions. All right, thank you. Mr. Robbins, for the government. May it please the court, Jonathan Robbins here on behalf of the Attorney General. Good morning to all of you. This case has been made relatively simple in light of this court's precedential decision in Garcia Hernandez against Buente. In that case, this court determined that when we're looking at the conduct at issue here and comparing it to the federal statute, the courts employ a circumstance-specific approach. The board, acknowledging this court's precedent in its decision in this case, did exactly that, employed the circumstance-specific approach, pointed out that Petitioner had been convicted of the avoidance of residence provision of the TRO here, appropriately deferred to its decision in a matter of stridum, which, by the way, this court agreed to in Garcia Hernandez against Buente, and appropriately determined that Petitioner was statutorily ineligible for cancellation of removal. I would take issue with this notion that it is still an open question as to whether this court has deferred to stridum. This court in Garcia Hernandez specifically said that it agreed with the reasoning of stridum. Now, I'll grant you that it didn't specifically go through a Chevron analysis, but it did cite to a Tenth Circuit case, Cespedes against Lynch, which did employ the Chevron analysis, and it cited to that case with approval. So I would dispute the notion of my colleague that this issue about deference to stridum being an open question. As Your Honor pointed out during your argument with my colleague, Petitioner is raising a lot of arguments that are essentially attempting to get this court to go back to the categorical approach away from the circumstance-specific approach. He's talking about minimum conduct. We don't compare the minimum conduct of it, well, we don't even have a need a conviction with respect to this particular statute, but when we're comparing state statute convictions to the federal offense, that's, and we're looking at whether minimum conduct is looked at with respect to the federal statute, that's exactly the categorical approach, and eventually, and possibly the modified categorical approach, which the Supreme Court in Ijuan said isn't appropriate for the circumstance-specific analysis. So given that there is precedent from this course agreeing with stridum and employing the circumstance-specific approach, that really is where this case should end.  And what would be an example of a provision, if violated, that would not trigger this section of ineligibility? The board in stridum actually mentioned this, and that the Ninth Circuit mentioned this as well. I think there are provisions in other types of orders, or for example, that the person is ordered to go to counseling or to pay for counseling, there are orders that... But isn't the need for counseling precipitated upon the threat of harm or harassment? I mean, can't you always link it back in some way if that's the purpose for the order to be issued? Well, there are other orders, for example, that require the payment for supervision during parenting time, so they would have to pay, there are orders to actually pay money for the supervision, so I don't think that would qualify under what you're referencing. But again, with employing the circumstance-specific approach here under this particular case, I mean, there's no dispute that petitioner violated, not just actually the avoidance of residence provision, but also the no contact provision. So... What was this bond violation about? I couldn't make heads or tails of it factually, as to how could she be on bond for something, for an offense that simultaneously with it being committed, I'm not that familiar with this Wisconsin statute. It's not that clear from the record. Are you referring to the bail jumping? Yeah. I'm not quite sure, it's not clear from the record, and I didn't handle this at the... I don't know that it's relevant, I just couldn't figure it out. I'm not sure, I don't know the answer. So given that the precedent forecloses all of the primary arguments the petitioner is making, we would respectfully ask that this court follow its precedent, and to the extent that petitioner is arguing that Chevron deference is not appropriate, I don't know if you want me to entertain this argument to sort of relook at the afforded distritum. If Your Honor is interested in that, I can discuss it. The Tenth Circuit's decision in Cespedes also provides a pretty detailed analysis of why Chevron deference is appropriate to this particular interpretation of the statute. Your Honor got a little bit into it regarding this this language regarding involves protection against, you know, so that language seems to indicate that there is, that you don't have to have actual threats, you don't have to have actual violence or bodily injury or harassment in order to qualify under the statute. It just has to involve protection against, and the board has taken the approach, and the Tenth Circuit discusses it. You could sort of have two different analyses with respect to what that language means, a narrow construction which would sort of cover maybe just imminent threats, or this broader construction which they've adopted. The Tenth Circuit referred to this as the nip-in-the-butt approach, which tries to prevent violence from occurring by stopping the build-up, you know, for example, the designed to prevent the violence in the future. When nipping in the mud, but nipping in the bud means removing a mother, single mother, with four U.S. citizen children. That's pretty strong medicine. Well, Your Honor, I mean, I certainly understand what you're saying there, but the consequences of violating these orders are severe, and it's written in the statute, and the Congress's intent here was clearly to, when you look at the, I mean, the federal statute itself doesn't even require a conviction. It's sort of designed in this way to cover people who violate these orders, to sort of encompass a large portion of people who violate these protective orders, because the statute itself doesn't even require a conviction. I see that I'm, I think the white light's on. Well, if there are no further questions, we would simply respectfully request that this court follow its precedent and deny petition for review. Okay. Thank you, Mr. Robbins. Mr. Kohler, rebuttal. Thank you for your time. With regard to a Chevron deference, that has never been done in this case, and with all respect to counsel, cases in the Ninth Circuit were decided before the BIA made its decision, so they could not have made a Chevron deference decision in that circuit, which dealt with the Utah statute, which requires, which mirrors that threats and intimidation and harassment must be there before you get an order of protection. All of these cases that dealt with this strident type of decision that has been decided by every court, every circuit, and so forth, all those jurisdictions have required threats, violence, intimidation in order to get the order of protection or the restraining order. Wisconsin does not require that. Wisconsin, you can get it without that. So I don't think that striding can be applied to Wisconsin. I don't think it can be applied to Wisconsin, and also in this particular case, we have a complaint which we don't know what that court found. There was a two-page complaint, just a narrative from, in essence, a police report, and at the end we say, figure it out. So we even don't know what provision she did violate, even looking at, giving it the best. She could have violated by staying at the house, which the person says, I was just finally fed up that she stayed at the house. She could have violated by having the contact version. So in this case, we should give Ms. Gabrielle Rodriguez the benefit of the doubt, and we should properly do a Chevron analysis in this case with regards to strident. Thank you. Thank you, counsel. The case will be taken under advisement. That concludes the cases scheduled for today.